IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MICHAEL VINCENT ZORICK,

Plaintiff,

v.                                          CIVIL ACTION NO. 1:19CV27
                                                    (Judge Keeley)

ANDREW M. SAUL, COMMISSIONER
OF SOCIAL SECURITY,

Defendant.

## MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND REJECTING IN PART THE REPORT AND RECOMMENDATION [DKT. NO. 17] AND REMANDING CASE TO THE COMMISSIONER

On February 27, 2019, the plaintiff, Michael Vincent Zorick ("Zorick"), filed a complaint seeking review of an adverse decision of the Commissioner of Social Security ("the Commissioner") (Dkt. No. 1). After the parties filed cross motions for summary judgment, Magistrate Judge James P. Mazzone entered a Report and Recommendation on November 21, 2019 ("R&R"), recommending that the Court deny Zorick's motion and grant the Commissioner's motion (Dkt. Nos. 11, 13, 15, 17). For the reasons discussed below, the Court **ADOPTS IN PART AND REJECTS IN PART** the R&R.

## I. BACKGROUND

Zorick filed a claim for disability insurance benefits on May 18, 2015, with a disability onset date of March 26, 2014 (R. 199-

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART THE REPORT AND RECOMMENDATION
[DKT. NO. 17] AND REMANDING CASE TO THE COMMISSIONER**

217).[1] His most recent relevant work was as a laborer for the Waste Department for the City of Stonewood, West Virginia between 2008 and 2014 (R. 203-05, 208). In his claim, Zorick alleged that a number of limitations prevented him from working, including a learning disability, arthritis, depression, anxiety, possible ADHD, torn cartilage in his ankles, fluid and swelling in his ankles, and stress (R. 217).

The Commissioner denied Zorick's claim, both initially and on reconsideration (Dkt. Nos. 99, 108). At Zorick's request, Administrative Law Judge Gregory M. Hamel ("the ALJ") conducted a hearing on November 28, 2017, following which he denied Zorick's claim in a written decision dated February 28, 2018 (R. 11-30, 31-64). Although the ALJ found that Zorick suffered from severe impairments, including "arthritic and cystic changes in the ankles, major depressive disorder, generalized anxiety disorder, and intellectual impairment," and that these impairments prevented Zorick from performing his past relevant work, he concluded that Zorick was not disabled because he could do other work, given his

---

[1] Throughout this Memorandum Opinion and Order, the Court cites the administrative record (Dkt. No. 8) by reference to the pagination as assigned by the Social Security Administration.

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART THE REPORT AND RECOMMENDATION
[DKT. NO. 17] AND REMANDING CASE TO THE COMMISSIONER**

age, education, work experience, and residual functional capacity

("RFC") (R. 17, 25-26).

The Appeals Council declined review on January 11, 2019, thus

rendering the ALJ's decision the final decision of the Commissioner

for purposes of appeal (R. 1-5, 197). Thereafter, Zorick filed suit

in this Court on February 27, 2019, alleging that the ALJ's

decision is not supported by substantial evidence (Dkt. No. 1 at

2). In particular, Zorick contends that the ALJ improperly

concluded that he (1) did not have an intellectual impairment

meeting or equaling a listed impairment ("listing"), and (2) is

capable of performing other work available in the national economy

(Dkt. 12 at 1).

Pursuant to 28 U.S.C. § 636 and this Court's local rules, the

case was referred to Magistrate Judge Mazzone, who found

substantial evidence supported the ALJ's determination that

Zorick's intellectual impairment does not meet or equal a listing

because Zorick did not exhibit marked limitations in two areas of

adaptive functioning. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 §

12.05B. Magistrate Judge Mazzone also found substantial evidence,

including vocational expert testimony, supported the ALJ's finding

that the Commissioner had carried his burden of proving Zorick

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART THE REPORT AND RECOMMENDATION
[DKT. NO. 17] AND REMANDING CASE TO THE COMMISSIONER**

could do other work in the national economy. Id. at 12. Zorick

filed timely objected to the R&R on December 3, 2019 (Dkt. No. 18).

## II. STANDARDS OF REVIEW

### A.   The Magistrate Judge's R&R

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must review

de novo any portion of the magistrate judge's recommendation to

which objection is timely made. Courts will uphold portions of a

recommendation to which no objection has been made if "there is no

clear error on the face of the record." See Diamond v. Colonial

Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).

### B.   The ALJ's Decision

Judicial review of the Commissioner's final decision is

limited to determining whether the ALJ's findings are supported by

substantial evidence and whether he correctly applied the law. See

42 U.S.C. § 405(g); Milburn Colliery Co. v. Hicks, 138 F.3d 524,

528 (4th Cir. 1998). It is the duty of the ALJ to make findings of

fact and resolve disputed evidence. King v. Califano, 599 F.2d 597,

599 (4th Cir. 1979).

Substantial evidence is that which a "reasonable mind might

accept as adequate to support a conclusion." Hays v. Sullivan,

907 F.2d 1453, 1456 (4th Cir. 1990) (quoting Richardson v. Perales,

4

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART THE REPORT AND RECOMMENDATION
[DKT. NO. 17] AND REMANDING CASE TO THE COMMISSIONER**

402 U.S. 389, 401 (1971) (internal quotation omitted)). "[I]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original) (quoting Laws v. Celbrezze, 368 F.2d 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the Court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). That "two inconsistent conclusions" may be drawn from evidence "does not prevent an administrative agency's findings from being supported by substantial evidence." Sec'y of Labor v. Mut. Mining, Inc., 80 F.3d 110, 113 (4th Cir. 1996) (internal quotation omitted).

Nonetheless, "[a]n ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." Diaz v. Chatter, 55 F.3d 300, 307 (7th Cir. 1995) (internal citations omitted). The Court must be able to "track the ALJ's reasoning and

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART THE REPORT AND RECOMMENDATION
[DKT. NO. 17] AND REMANDING CASE TO THE COMMISSIONER**

be assured that the ALJ considered the important evidence." Id. at

308 (quoting Green v. Shalala, 51 F.3d 96, 101 (7th Cir. 1995)).

### III. DISCUSSION

The Court incorporates by reference Zorick's statement of the

case, the parties' stipulations of fact, and Magistrate Judge

Mazzone's articulation of the Commissioner's five-step evaluation

process (Dkt. Nos. 12 at 2-6, 14 at 3-5, 17 at 2-3).[2] Finding no

clear error, the Court also adopts the portions of the R&R to which

Zorick has not objected. Finally, following a de novo review of the

issues in dispute, the Court adopts in part and rejects in part the

R&R (Dkt. No. 17).

**A.   Marked Limitations in Adaptive Functioning Requirements of
Listed Impairment § 12.05B**

Zorick objects to Magistrate Judge Mazzone's conclusion that

substantial evidence supports the ALJ's finding that he does not

have an impairment or combination of impairments that meet or equal

a listing resulting in disability (R. 17). 20 C.F.R. § 404.1525. If

_____

[2] The "Statement of the Case" section of the Commissioner's
memorandum in support of his motion for summary judgment contains
several inaccurate dates and record citations, as well as
inaccurate recitations of Zorick's severe impairments and residual
functional capacity (Dkt. No. 14 at 1-3).

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART THE REPORT AND RECOMMENDATION
[DKT. NO. 17] AND REMANDING CASE TO THE COMMISSIONER**

Zorick's impairments had met or equaled a listing, he would have been considered disabled. Id.

Pursuant to 20 C.F.R. § 404.1520a(a), (e)(4), determining whether a mental impairment rises to the level of a disability requires the ALJ to document a multi-step analysis known as the "special technique:"

> Considering the claimant's pertinent symptoms, signs, and laboratory findings, the ALJ determines whether the claimant has a medically determinable mental impairment(s) and rate[s] the degree of functional limitation resulting from the impairment(s) according to certain criteria. Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment. If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities.

Wendell v. Saul, No. 2:19-CV-00301, 2020 WL 741721, at *4 (S.D.W.Va. Jan. 23, 2020), report and recommendation adopted, No. CV 2:19-0301, 2020 WL 748871 (S.D.W.Va. Feb. 13, 2020) (internal citations and quotation marks omitted); see also Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 659 (4th Cir. 2017).

Here, the ALJ followed and documented the steps required by the special technique. The parties do not contest his finding that Zorick has severe, medically determinable mental impairments (R. 17). Indeed, the ALJ discussed in detail Zorick's own statements,

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART THE REPORT AND RECOMMENDATION
[DKT. NO. 17] AND REMANDING CASE TO THE COMMISSIONER**

past intelligence tests and psychological examinations, treatment history, opinion evidence of treatment providers, and the testimony of Zorick's wife before concluding that Zorick's severe mental impairments include major depressive disorder, generalized anxiety disorder, and intellectual impairment (R. 22-24). The ALJ also documented the evidence and his specific findings as to the degree of limitation in each of the functional areas (R. 18-21). Finally, after finding that Zorick's severe mental impairment did not meet or equal the criteria for a listing, he incorporated Zorick's mental impairments into the RFC (R. 21).

In order to meet listing § 12.05B for an intellectual impairment, Zorick must demonstrate three criteria:

1. Significantly subaverage general intellectual functioning evidenced by a or b:

a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART THE REPORT AND RECOMMENDATION
[DKT. NO. 17] AND REMANDING CASE TO THE COMMISSIONER**

> a. <u>Understand, remember, or apply information (see
> 12.00E1)</u>; or
> b. <u>Interact with others (see 12.00E2)</u>; or
> c. Concentrate, persist, or maintain pace (see
> 12.00E3); or
> d. Adapt or manage oneself (see 12.00E4); and
>
> 3. The evidence about your current intellectual and
> adaptive functioning and about the history of your
> disorder demonstrates or supports the conclusion that the
> disorder began prior to your attainment of age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05B (emphasis
added).

In this case, Zorick challenges the adequacy of the ALJ's
finding that he did not demonstrate marked limitations of adaptive
functioning in the areas of (1) understanding, remembering, or
applying information and (2) interacting with others (Dkt. No. 18
at 2). A "marked" degree of limitation means that Zorick's adaptive
functioning ability in an area is "independently, appropriately,
effectively, and on a sustained basis . . . seriously limited." §
12.00F(2)(d).[3] The degree to which Zorick can "understand,

---

[3] Degree of limitation is rated on a five-point scale as to
the claimant's ability to function independently, appropriately,
effectively, and on a sustained basis. The scale includes: (1) no
limitation; (2) mild limitation in which functioning is slightly
limited; (3) moderate limitation in which functioning is fair; (4)
marked limitation in which functioning is seriously limited; and
(5) extreme limitation in which the claimant is unable to function.
20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F(2)(a-e).

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART THE REPORT AND RECOMMENDATION
[DKT. NO. 17] AND REMANDING CASE TO THE COMMISSIONER**

remember, and apply information" refers to his ability to learn, recall, and use information to perform work activities. § 12.00E1. His ability to "interact with others" refers to his ability to relate to and work with supervisors, co-workers, and the public. § 12.00E2.

#### 1. Ability to Understand, Remember, and Apply Information

Zorick argues that the scores he received on a five-part Wide Range Achievement Test ("WRAT-4"), as part of an evaluation report of psychologist Jennifer Robinson ("Robinson"), are the best evidence of his ability to understand, remember, and apply information (Dkt. No. 12 at 102).[4] He contends that, because his sentence comprehension score was equivalent to a 1.9 grade level, he is markedly limited in his ability to understand, remember, and apply information (Dkt. No. 18 at 2).

The criteria for determining the degree of a functional limitation include "all relevant and available clinical signs and laboratory findings, the effects of [Zorick's] symptoms, and how [Zorick's] functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings,

---

[4] Although Zorick states that the test was administered in March 2015, it actually was administered on April 20, 2015 (R. 304).

10

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART THE REPORT AND RECOMMENDATION
[DKT. NO. 17] AND REMANDING CASE TO THE COMMISSIONER**

medication, and other treatment." 20 C.F.R. § 404.1520a(c)(1). When documenting his determination, however, an ALJ is neither required to discuss all evidence of record, nor refer to particular findings in a report on which he relied. Aytch v. Astrue, 686 F. Supp. 2d 590, 601-02 (E.D.N.C. 2010) (citing Pine Mountain Coal Co. v. Mays, 176 F.3d 753, 762 n. 10 (4th Cir. 1999)).

In Zorick's case, the ALJ properly considered Robinson's report; he not only referred to the report, but also specifically noted Zorick's scores on a different, fifteen-part test administered as part of the evaluation, the Wechsler Adult Intelligence Scale - Fourth Edition ("WAIS-IV") (R. 23). He also discussed Robinson's ultimate finding that Zorick had a "mild intellectual disability," which she based on both the WRAT-4 and WAIS-IV tests (R. 306-307). Given this thorough discussion, the ALJ was not required to refer specifically to the WRAT-4 sentence comprehension grade equivalent when relying on Robinson's report.

Although the WRAT-4 test was administered for diagnostic and treatment purposes, and not to establish whether Zorick was disabled, Zorick's sentence comprehension grade equivalent does not, as Zorick argues, "show" that he has a marked limitation in this area (Dkt. No. 18-2). Indeed, as Robinson explained, when

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART THE REPORT AND RECOMMENDATION
[DKT. NO. 17] AND REMANDING CASE TO THE COMMISSIONER**

Zorick's sentence comprehension score is considered together with his word reading, spelling, math computation, and reading composite scores as part of the WRAT-4 test, the scores "tend to support a conclusion of mild intellectual disability" (R. 307). Her final summary mirrors this conclusion. Id.

In light of the fact that Robinson never singled out Zorick's reading comprehension grade equivalent as indicative of anything other than a mild disability, Zorick cannot seriously argue that the ALJ should have reached a different conclusion. Therefore, the ALJ's conclusion that Zorick did not demonstrate a marked limitation in the adaptive functioning area of understanding, remembering, and applying information is supported by substantial evidence.

2. Ability to Interact With Others

Relying on the finding of a marked limitation in social functioning by two state psychologists, Dr. James W. Bartee ("Bartee") and Dr. Anne Logan ("Logan"), Zorick next argues that the ALJ should have found a marked, rather than moderate, limitation in his ability to interact with others (Dkt. No. 12 at

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART THE REPORT AND RECOMMENDATION
[DKT. NO. 17] AND REMANDING CASE TO THE COMMISSIONER**

8).[5] Specifically, he contends that the ALJ failed to properly consider the narrative discussion portions of the Mental Residual Functional Capacity Assessment forms completed by Bartee and Logan (Dkt. No. 18 at 3).

As explained in the R&R, the forms completed by Bartee and Logan were more nuanced than Zorick suggests. Each included more explanation than the ultimate finding of a marked limitation in social functioning (Dkt. No. 17 at 8). Indeed, these forms include summary conclusions of moderate or no limitations regarding Zorick's ability to (1) accept instructions and respond appropriately to criticism from supervisors; (2) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (3) maintain socially appropriate behavior; (4) adhere to basic standards of neatness and cleanliness; and (5) ask simple questions or request assistance (R. 78, 95).

---

[5] The state psychologists' forms use the terms "social functioning" rather than "interact with others." "Social functioning" reflects the previous category for evaluating mental disorders, but, as Zorick's counsel explained at the November 28, 2017 hearing, it approximates the new category of "interacting with others" (R. 35, 20). The effective date for use of the current category was January 17, 2017, and applies to claims, such as Zorick's, pending on or after that date. 81 Fed. Reg. 66137, 66138. Federal Courts review final decisions using the rules in effect at the time the decision is issued. Id.

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART THE REPORT AND RECOMMENDATION
[DKT. NO. 17] AND REMANDING CASE TO THE COMMISSIONER**

Zorick contends that the instructions for the forms explain that the summary conclusions of moderate or no limitations are to "help determine the individual's ability to perform sustained work activities," whereas "the actual mental residual functional capacity assessment is recorded in the narrative discussion(s)" (R. 77, 94). He asserts that the instructions "make clear that <u>only</u> the narrative discussion represents the claimant's mental residual functional capacity" (Dkt. No. 18 at 3) (emphasis added).

This argument misses the mark. The relevant issue is the degree of Zorick's deficit in adaptive functioning for determining whether his intellectual impairment meets or equals a listing, not the RFC assessment for determining how his impairment constrains his work abilities. Indeed, the R&R Zorick attached to his objections in support of his argument states as much. <u>Campbell v. Colvin</u>, Civil Action No. 2:14-CV-22 (N.D.W.Va. 2014) (quoting Social Security Administration's Program Operations Manual and explaining that summary conclusions are "a worksheet to aid in deciding the presence and degree of functional limitations" while the narrative is "for recording the mental RFC determination").

As discussed earlier, the criteria for rating the degree of an adaptive limitation include "all relevant and available clinical

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART THE REPORT AND RECOMMENDATION
[DKT. NO. 17] AND REMANDING CASE TO THE COMMISSIONER**

signs and laboratory findings . . ." 20 C.F.R. § 404.1520a(c)(1).
The ALJ therefore properly considered the entirety of the forms
completed by Bartee and Logan in his assessment of Zorick's
adaptive functioning rating. The ALJ's moderate rating of Zorick's
limitation in his ability to interact with others is therefore
supported by substantial evidence, as is the conclusion that Zorick
did not have two marked limitations in adaptive functioning.
Accordingly, the Court overrules Zorick's objection to the ALJ's
decision that Zorick's impairments did not meet or equal a listing
pursuant to § 12.05B.

**B.    "Other Work" in National Economy**

Zorick next objects to the ALJ's conclusion that there is
other work that he can perform in the national economy (Dkt. No. 12
at 12). He first argues that the ALJ never explained his failure to
incorporate into the RFC Bartee's opinion that supervision of
Zorick "should focus on . . . multiple daily check-ins to keep him
on task when moving from one activity to another, or completing
tasks in sequence" (Dkt. Nos. 8-3 at 15, 18 at 4). He then contends
that, even assuming the ALJ did incorporate this portion of
Bartee's opinion into the RFC, an alternative hypothetical question
the ALJ asked during the hearing produced testimony from the

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART THE REPORT AND RECOMMENDATION
[DKT. NO. 17] AND REMANDING CASE TO THE COMMISSIONER**

vocational expert that no such jobs existed in the national economy. Id.

### 1. The RFC and Bartee's Opinion

If, as here, a claimant's severe impairments neither meet nor equal a listing, the ALJ must then assess the RFC.[6] 20 C.F.R. § 404.1520(e). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 61 Fed. Reg. 34,474, 34,478 (July 2, 1996); see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion")).

The Fourth Circuit has held that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the

---

[6] A claimant's RFC "is the most he can still do despite his limitations." 20 C.F.R. § 404.1545. It is also described as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Id.

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART THE REPORT AND RECOMMENDATION
[DKT. NO. 17] AND REMANDING CASE TO THE COMMISSIONER**

pertinent legal requirements to the record evidence." <u>Monroe</u>, 826 F.3d at 189 (quoting <u>Radford v. Colvin</u>, 734 F.3d 288, 295 (4th Cir. 2013)); <u>see also</u> <u>Arnold v. Secretary</u>, 567 F.2d 258, 259 (4th Cir. 1977) (explaining that a court cannot determine if findings are supported by substantial evidence unless the Commissioner has "sufficiently explained the weight he has given to obviously probative exhibits").

The RFC is crucial in evaluating an individual's capacity to engage in substantial gainful employment. <u>Cruse v. U.S. Dept. of Health & Human Services</u>, 49 F.3d 614, 619 (10th Cir. 1995). When both exertional and non-exertional impairments diminish a claimant's residual functional capacity, the Commissioner must produce expert vocational testimony to establish that the national economy offers employment opportunities to the claimant given his abilities and limitations. <u>Hammond v. Heckler</u>, 765 F.2d 424, 426 (4th Cir. 1985).

In Zorick's RFC, the ALJ took into account his exertional and non-exertional limitations, as follows (R. 57-58):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) but can only occasionally climb stairs, balance, stoop, kneel, crouch and crawl; cannot climb ladders and similar devices; cannot work in

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART THE REPORT AND RECOMMENDATION
[DKT. NO. 17] AND REMANDING CASE TO THE COMMISSIONER**

hazardous environments; is limited to routine and repetitive tasks only and cannot perform tasks requiring public contact or more than occasional interaction with coworkers and supervisors.

The first and second hypothetical questions that the ALJ asked the vocational expert during Zorick's hearing were based on this RFC (R. 21). In response to the first hypothetical question, which included only Zorick's mental limitations, the vocational expert testified that Zorick would be able to perform his past relevant work (R. 57-58). After the ALJ added Zorick's exertional limitations to his second hypothetical question, the vocational expert testified that Zorick could not perform his past work, but would be able to perform other work:

Q: . . . And in my first question, please assume that the person can do – well, actually my first question doesn't assume any exertional, postural, or environmental, or manipulative limitations. But instead just assume that the person has the following restrictions. Assume that he can carry out only very routine and repetitive types of tasks. These are tasks that would not change must from day to day or require the person to understand, remember, or carry out any complicated or complex types of instructions or tasks. And also assume the person cannot do tasks that require public contact, either in person or over the phone. Or more than occasional interactions with coworkers or supervisors. Do you need me to repeat anything?

A: No, your honor.

Q: Now, would [sic] these limitations in mind, would the person be able to do the past jobs?

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART THE REPORT AND RECOMMENDATION
[DKT. NO. 17] AND REMANDING CASE TO THE COMMISSIONER**

A: I believe so, Your Honor.

Q: Now, in my second question, I want to add some
limitations that would deal wth some physical issues.
Assuming [sic] this question that the person can do light
work, no more than light work. And that the person can
only on an occasional basis climb stairs, balance, stoop,
kneel, crouch, crawl. And assume also the person cannot
climb ladders or similar devices or work in hazardous
environments. For example, at heights or around dangerous
machinery. Dangerous machinery though not to include
things like driving or doing ordinary activity around the
house. Would these additional–this additional limitation
I'm assuming [sic] the person could not do the past work?

A: That's correct, Your Honor.

Q: Like I said I think he said they were at least medium.
Now –

A: Correct.

Q: – are you able to identify any unskilled, light jobs
that could be performed given these restrictions? And if
so, could you give two examples.

A: Yes, Your Honor. Okay, at the light level–and my
computer is acting up again. Okay. At the light level I
believe that hypothetical individual could function as a
garment and laundry folder. Light, unskilled, SVP 2.
49,500 nationally. 369.687-018. Or as a cleaner. Light,
unskilled, SVP 2. 700,000 nationally. 323.687-014.

This testimony establishes that the RFC and the first two
hypothetical questions incorporated Bartee's opinion that Zorick
"can maintain brief, superficial contacts with supervisors and an
occasional coworker," and that "contact with the general public
should be avoided" (R. 78). Zorick nevertheless objects to the fact

that the ALJ did not incorporate Bartee's opinion that Zorick's "supervision should focus on clear task structure and multiple daily 'check-ins' to keep him on task when moving from one activity to another, or completing tasks in sequence." Id.

In his decision, the ALJ assigned Bartee's opinion "some weight" . . . "due to [Zorick's] intellectual disorder, anxiety, and depression with concentration and memory issues with reported trouble dealing with others" (R. 24). In addition, the ALJ cited other evidence, including Zorick's function report, Robinson's evaluation, and a disability determination form completed by Dr. David Peasak ("Peasak") (R. 279-80, 305, 307, 342). But the ALJ never explained why he only allocated "some weight" to Bartee's opinion, nor why he only incorporated part of Bartee's opinion into the RFC.

In his function report, Zorick described his interrelationships with people: "I argue with people all the time because they start it with me. I cannot be around people any more [sic] or do anything at all" (R. 280). In her evaluation, Robinson explained that Zorick "stated that he did not get along well with people at work, and stated that people often picked on him and would 'ride me a lot,'" but also that he "gets along well with most

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART THE REPORT AND RECOMMENDATION
[DKT. NO. 17] AND REMANDING CASE TO THE COMMISSIONER**

people, but has difficulty getting along with some" (R. 305). She further explained that Zorick helps get his children ready for school, washes dishes, does some laundry, takes out the garbage, and drives. Id. She noted that his eye contact was good, his verbal responses were elaborate, and his speech was relevant and coherent. Id. She also noted that his immediate memory and remote memory were within normal limits, his recent memory was severely deficient, and his concentration was moderately deficient. Id.

In addition, Peasek, in his disability determination form, documented Zorick's major depressive and anxiety disorders (R. 342). He opined that Zorick's mental condition posed functional limitations and that his depression and anxiety were complicated by his borderline intellectual functioning. Id. He further concluded that Zorick's mental condition interfered with his ability to work, particularly because of his low IQ, anxiety, and moodiness. Id.

Although all this evidence is consistent with the portion of Bartee's opinion incorporated into the RFC and the ALJ's first two hypothetical questions, mere citation to this evidence does not excuse the ALJ's failure to explain why he only assigned "some weight" to Bartee's opinions. "Without more specific explanations of the ALJ's reasons" for the weight assigned to Bartee's opinion,

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART THE REPORT AND RECOMMENDATION
[DKT. NO. 17] AND REMANDING CASE TO THE COMMISSIONER**

the Court simply cannot "track the ALJ's reasoning" or conduct a "meaningful substantial-evidence review." Green 51 F.3d at 101; Monroe, 826 F.3d at 189 (citing Radford, 734 F.3d at 295). Accordingly, the Court rejects the R&R's finding that the ALJ's decision regarding other work was supported by substantial evidence, and remands the case to the Commissioner with instructions to provide a "narrative discussion" of the reasons for the weight assigned to Bartee's opinion. Monroe, 826 F.3d at 189.

### 2. Vocational Expert Testimony

Zorick also argues that, had the ALJ adopted Bartee's opinion regarding multiple daily check-ins, no relevant vocational expert testimony would support the Commissioner's burden of proof that he can perform other work in the national economy (Dkt. No. 12 at 13). He bases this argument on the following alternative hypothetical question incorporating the limitation that Zorick needed multiple daily check-ins (R. 60-63):

> Q: Multiple daily check ins to keep him on task and moving. Okay, yeah. Mr. Bell, maybe–you know, if the person required, in other words, let's say the person was assigned some routine and some repetitive tasks but nevertheless needed some prompting in other words. Even though they're routine and repetitive and done every day, the person would need reminders periodically during the day in order to even perform those functions. Now, is that easier to answer in those terms?

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART THE REPORT AND RECOMMENDATION
[DKT. NO. 17] AND REMANDING CASE TO THE COMMISSIONER**

A: Well, the hypotheticals indicated—I'm looking back here, occasional interaction with coworkers and supervisors. I mean, if it's occasional that would be up to a third of the day. So, that would be—I mean, to me that's approximately throughout the day, so.

Q: Okay. But what if he needed to be reminded about the—you know—I don't mean a supervisor just checking in to see that the person is doing the work. I don't mean that kind of checking. But what if they needed like reminders about what the instructions were or . . .

A: No, I don't think they'd be able to continually be trained and retrained. That wouldn't be tolerated. It would—after the period of time of like—after 30 days in these unskilled jobs they should be able to know the job.

Zorick contends that this limitation of "[needing] reminders about what the instructions were" clarifies Bartee's residual functional assessment regarding multiple daily check-ins (Dkt. Nos. 15 at 2, 18 at 4). He argues that, had the ALJ included Bartee's opinion regarding multiple daily check-ins into the RFC, the vocational expert's final response would have been that there was no other work Zorick could have performed.

The Commissioner, however, contends that this dialogue included two separate hypothetical questions, and that the vocational expert's first response implied that other work was available even with the addition of the multiple daily check-ins limitation. The Commissioner argues that other work was precluded

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART THE REPORT AND RECOMMENDATION
[DKT. NO. 17] AND REMANDING CASE TO THE COMMISSIONER**

only after the ALJ modified the hypothetical further to include a limitation more restrictive than warranted by Bartee's opinion.

The ALJ's failure to address this alternative hypothetical in his decision leaves the Court unable to discern whether the limitation of "[needing] reminders of what the instructions were" at the end of the alternative hypothetical merely clarified Bartee's opinion that Zorick required multiple daily check-ins, or constituted a more restrictive limitation that assumed facts not in evidence. See e.g., Jackson v. Colvin, No. 3:14-CV-24834, 2015 WL 5786802, at *2 (S.D.W.Va. Sept. 30, 2015) ("It is not the role of the courts to search for reasons . . . that were not furnished by the ALJ.").

Accordingly, the Court rejects the R&R's conclusion that the ALJ's decision regarding other work was supported by substantial evidence. Morever, because this issue is likely to arise again once the Commissioner, on remand, explains the reasons for the weight assigned to Bartee's opinion, he should also explain how, if at all, the vocational expert's answer to the alternate hypothetical informed his decision.

### IV. CONCLUSION

For the reasons discussed, the Court:

- **ADOPTS IN PART AND REJECTS IN PART** the R&R (Dkt. No. 17);

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART THE REPORT AND RECOMMENDATION
[DKT. NO. 17] AND REMANDING CASE TO THE COMMISSIONER**

- **GRANTS IN PART AND DENIES IN PART** Zorick's motion for summary judgment (Dkt. No. 11);

- **GRANTS IN PART AND DENIES IN PART** the Commissioner's motion for summary judgment (Dkt. No. 13);

- **REVERSES** the Commissioner's decision under sentence four of 42 U.S.C. § 405(g) and § 1383(c)(3); and

- **REMANDS** this case to the Commissioner for further proceedings consistent with this Memorandum Opinion.

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record, to enter a separate judgment order, and to strike this case from the Court's active docket.

DATED: March 19, 2020.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE